IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CAROLYN J. LOWRY, )
)
    Plaintiff, )
)
) CIV-12-413-HE
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration[1], )
)
    Defendant. )

# REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

I. Background

Plaintiff filed an application for disability insurance benefits ("DIB") in June 2004, and she filed an application for supplemental security income benefits ("SSIB") in November 2006. (TR 51-53, 504-507). In her DIB application, she alleged she was disabled beginning May 18, 2000, due to problems with her feet and low back, tendonitis in her elbows, and high blood pressure. (TR 81). Plaintiff has a high school equivalency degree and vocational training as a home health aide. (TR 87). In a hearing conducted in June 2006 before Administrative Law Judge ("ALJ") O'Bryan (TR 365-397), Plaintiff testified that she was 48 years old and had previously worked as a product assembler, sewing machine operator, cable splicer, and home health aide. Plaintiff stated she was terminated from her job in May 2000 because she refused to work overtime and she had not worked since then. (TR 371).

She testified she had two surgeries in 2000 to repair heel spurs on both feet and that she had pain in her feet with standing longer than 45 minutes. She also described a bulging disc in one area in her lower back causing constant pain aggravated by bending, tendonitis in both elbows, arthritis in her hands causing constant pain, and knee pain with squatting or bending. She stated her back pain had been treated with steroidal injections and muscle relaxant and anti-inflammatory medications as well as a TENS unit. Plaintiff estimated she could stand for 45 minutes, sit for 45 minutes, lift eight pounds, and walk about one and a half blocks. A vocational expert also testified.

In a decision entered in August 2006, ALJ O'Bryan denied Plaintiff's applications. (TR 13-18). While Plaintiff's request for review of this decision was pending before the

Appeals Council, Plaintiff filed her SSIB application. The Appeals Council declined to review the decision, and Plaintiff appealed the Commissioner's final decision to this Court. In March 2008, District Judge Heaton reversed the decision and remanded for further administrative proceedings. <u>Lowry v. Commissioner</u>, Case No. CIV-07-812-HE (Order and Judgment, Heaton, D.J.). The Appeals Council issued an Order in May 2008 vacating the Commissioner's decision and remanding the case with the instruction that the administrative law judge should consider whether Plaintiff's subsequent SSIB should be consolidated with her DIB claim. (TR 444).

In July 2008, ALJ Wampler conducted a supplemental hearing. (TR 931-937). In October 2008, ALJ Wampler issued a partially favorable decision for Plaintiff. ALJ Wampler consolidated Plaintiff's DIB and SSIB claims and found that Plaintiff was disabled beginning September 13, 2007, on her 50th birthday, but not before that date. (TR 450-460). Based on her DIB application, ALJ Wampler found that Plaintiff was not disabled on or before December 31, 2005, the date on which she was last insured for DIB. (TR 460). Based on her SSIB application, ALJ Wampler found that Plaintiff was disabled beginning September 13, 2007. (TR 460).

The Appeals Council vacated the Commissioner's final decision and remanded for further administrative proceedings because a portion of the record could not be located. (TR 463-464). A supplemental hearing was conducted on August 15, 2011, before ALJ Wampler. (TR 938-952). In a decision entered October 28, 2011, ALJ Wampler ("ALJ") found that Plaintiff was disabled beginning September 13, 2007. (TR 415-425). With respect to

Plaintiff's DIB application, the ALJ found that Plaintiff was not disabled on or before December 31, 2005, the date on which her insured status expired. (TR 425). With respect to her SSIB application, the ALJ found that Plaintiff was disabled beginning September 13, 2007, on her 50th birthday, but not before that date. (TR 425).

Following the agency's well-established sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 18, 2000, the date she alleged her disability began. (TR 419). At step two, the ALJ found Plaintiff had severe impairments due to "chronic back pain secondary [to] degenerative disc disease; plantar fascitis and heel spurs requiring the September and October 2000 surgical corrections; residual of stress fracture of her right foot not requiring surgery; complaints of neck and upper extremity pain possibly secondary to degenerative arthritis of her cervical spinal region; hypertension controlled by medication; varicose veins; restless sleep syndrome; and compression fracture of vertebrae." (TR 419-420).

At step three, the ALJ found that Plaintiff's impairments were not disabling *per se* under the agency's Listing of Impairments. At the fourth step, the ALJ summarized the medical and non-medical evidence and found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of unskilled to skilled work at the sedentary exertional level except that she could only occasionally climb stairs or ramps, balance, stoop, kneel, or crouch, she could not crawl or climb ladders, and she could understand, remember, and carry out detailed and some complex job instructions. (TR 420). In light of this RFC for work, the ALJ found that Plaintiff was unable to perform her past relevant work. (TR 423).

Reaching step five, the ALJ found that "[p]rior to September 13, 2007, transferability of job skills was not material to the determination of disability," and that "[p]rior to September 13, 2007, considering the claimant's age, education, work experience, and [RFC], there were a significant number of jobs in the national economy that the claimant could have performed." (TR 423). However, "[s]ince September 13, 2007, the claimant has been unable to make successful adjustment to other work," and she was therefore disabled beginning September 13, 2007. (TR 423-424).

The Appeals Council declined to review this decision. (TR 398-399). Therefore, the ALJ's October 2011 decision is the final decision of the Commissioner. See 20 C.F.R. §§404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

Plaintiff appeals the Commissioner's decision only with respect to the finding that she was not disabled prior to September 13, 2007. Relying on Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), and Social Security Ruling ("SSR") 96-7p, Plaintiff alleges that the ALJ erred in analyzing the credibility of her subjective complaints. Specifically, Plaintiff asserts that the ALJ did not "closely and affirmatively" link substantial evidence to his conclusion that Plaintiff's subjective complaints were not entirely credible, improperly relied on the absence of evidence, and failed to provide sufficient reasons for discounting her subjective complaints of disabling pain and nonexertional limitations. Secondly, Plaintiff alleges that the ALJ's RFC finding is not supported by substantial evidence.

II. Standard of Review

In this case, judicial review of the Commissioner's decision is limited to a

determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of DIB expired on December 31, 2005. (TR 416). Consequently, to be entitled to receive DIB, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of [her] insured status" on or before December 31, 2005. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. RFC and Credibility Determinations

"The [agency's] regulations require that an ALJ's RFC [finding] be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." Poppa v. Astrue, 569 F.3d1167, 1170-1171 (10th Cir.

2009)(citing 20 C.F.R. §§ 416.929, 416.945). Noting that "the purpose of the crediblity evaluation is to help the ALJ assess a claimant's RFC," the court in Poppa recognized that "the ALJ's credibility and RFC determinations are inherently intertwined." Id. at 1171.

Plaintiff first contends that the ALJ did not adequately explain his finding that her subjective statements were only partially credible "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)(quotations and citation omitted). However, a credibility finding "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's RFC determination includes detailed references to the objective medical evidence in the record. In connection with this determination, the ALJ reasoned that Plaintiff's subjective complaints were inconsistent with other evidence in the record. (TR 422). The ALJ reasoned that "with the exception of the family practice specialist's May 2006 assessment [of] totally disabling health impairments, no other treating or evaluating physician has assessed the claimant's health impairment[s] as imposing totally disabling restrictions and limitations." (TR 422).

Specifically, the ALJ pointed to the "reports and assessment of an occupational/environment specialist who . . . from March 2001 through September 2004 . . . assist[ed] the prosecuting of the claimant's workers' compensation claim." (TR 422).

7

"For no period of 12 continuous months does the occupational/ environment specialist assess the claimant as suffering totally disabling health impairments." (TR 422). Additionally, the ALJ reasoned that Plaintiff had not "presented any persistent complaints to her treating and evaluating physicians that she is unable to sit for prolonged periods, operate foot pedals, . . . stand and/or walk for non-prolonged periods, use her upper extremities, occasionally perform postural changes, and etc. In fact, after successful addressing of her foot and back pain through invasive treatments, the claimant's most significant complaints have been the inability to stand/walk for prolonged periods." (TR 422).

The ALJ further reasoned that "[s]imilarly, the January 2007 complaint of knee pain since November 2006 appears to be isolated and cannot be confirmed as a persistent medical problem by the available medical evidence." (TR 422). The ALJ also noted that "[d]espite her complaints of marked back pain, repeated physical examinations have persistently showed her to demonstrate good mobility, strength, and sensory and neurological functions in her lumbar spinal region and her lower extremities. . . . [T]he claimant subsequently has been followed with ongoing conservative medical treatments and attention by a variety of medical specialists, including family medicine specialists, orthopedics, and a pain management specialist. . . . She has benefitted from the ongoing conservative medical treatments, as her lower extremity and back symptoms have been persistently responsive to conservative treatments and the severity of her lower extremity and back health impairments and physical functions have remained stable without signs of significant deterioration." (TR 421).

Further, the ALJ noted with regard to her foot problems that her "plantar fascitis and heel spur syndrome were successfully addressed by the September and October 2000 surgical procedures" and "there is no showing that after April 2003 she has subsequently persistently presented complaints of foot pain requiring ongoing medical treatments or attention." (TR 421).

The ALJ recognized that "in May 2006 the claimant complained to the family practice specialist who assessed her as suffering total disabling health impairments that she was experiencing acute neck and upper extremity pain (radiculopathy) resulting from degenerative disc disease of her cervical spinal region treated by neurosurgeon and documented a MRI scan confirming a cervical spinal lesion." (TR 422). However, the ALJ reasoned that a "review of the available medical [record] does not confirm the exist[ence] of the reported treatment for symptoms related to cervical spine disease and/or MRI scan findings of . . . a cervical spinal lesion." (TR 422).

Further, the ALJ reasoned that "there is no medical documentation of hand pain and other symptoms resulting from arthritis of the claimant's hands. Nor is she described as exhibiting any persistent restrictions and limitations of the use of her upper extremities. In fact, even after the established [disability] onset date of September 13, 2007, ongoing medical records show that the claimant's report of her symptoms regularly reflects denial of ongoing neck and upper extremity pain and repeated physical examination[s] do not yield findings indicative [of] any such symptoms." (TR 422). Further, the ALJ noted that Plaintiff's medical impairments due to "varicose veins, restless leg syndrome, sleep

disturbance, and compression fracture of vertebrae did not develop[ ] until 2010." (TR 422).

Contrary to Plaintiff's argument, the ALJ's detailed credibility finding was closely and affirmatively related to objective medical evidence in the record. Further, there is substantial evidence in the record to support the credibility finding. For instance, in November 2004, Dr. Anagnost, Plaintiff's treating orthopedist, noted that Plaintiff's back and leg pain were markedly improved following a series of epidural injections of steroidal medication. (TR 721). Only conservative treatment was recommended for her degenerative disc disease. (TR 721).

In a consultative physical examination conducted in February 2007, the examiner, Dr. Stow, reported that Plaintiff exhibited normal gait without limp or the use of assistive devices, normal strength, and unrestricted range of motion. (TR 753-760). Plaintiff exhibited full range of motion of her cervical spine, hips, knees, and hands/wrists in April 2010 and she denied heel pain, finger pain, leg pain, shoulder pain, joint stiffness or swelling, neck pain, muscle weakness, joint pain, or back pain. (TR 832-833). Plaintiff points only to her treating family physician's medical source statement as evidence that contradicts the ALJ's credibility determination. However, as discussed below, the ALJ provided sufficient reasons for giving little weight to this medical opinion.

Plaintiff next contends that the ALJ did not perform a proper RFC analysis. Plaintiff's specific argument is that the ALJ's finding of a severe impairment due to "complaints of neck and upper extremity pain" should have prompted the ALJ to include limitations "such as on grasping, fingering, feeling, and gripping" in the RFC assessment. Plaintiff's Opening

10

Brief, at 8-9. Plaintiff's argument does not refer to specific portions of the medical record or to any evidence suggesting that Plaintiff was limited in her abilities to grasp, finger, feel, or grip.

Moreover, the ALJ discussed Plaintiff's complaint of neck and upper extremity pain and noted that the lack of MRI or other objective medical evidence to support her assertion of a cervical impairment or persistent treatment for symptoms related to a cervical impairment. The ALJ also noted that medical records after September 2007 showed that Plaintiff regularly denied neck and upper extremity pain and "repeated physical examination did not yield findings indicative [of] any such symptoms." (TR 422). In the absence of objective evidence supporting grasping, fingering, feeling, or gripping limitations, there is substantial evidence to support the ALJ's finding that Plaintiff's RFC for sedentary work was limited only by occasional postural restrictions.

IV. Analysis of Treating Doctor's Opinion

Plaintiff contends that the ALJ did not follow the proper procedure in analyzing her treating doctor's medical source statement. Dr. Alexander Frank, M.D., a family physician, treated Plaintiff in 2002-2005. In February 2004, Dr. Alexander noted that in an office visit Plaintiff complained of increased pain in her lumbar spine that was constant and radiated to her left hip and leg with numbness. (TR 265).

Dr. Frank referred Plaintiff for MRI testing of her lumbar spine which showed degenerative changes, a "collapsed" disc at one level, and a "broad bulge" of the disc compressing the nerve roots. (TR 260). Dr. Frank referred Plaintiff to Dr. Anganost. (TR

11

258, 319). Dr. Anganost reviewed x-rays and Plaintiff's MRI and gave a diagnostic impression of degenerative disc disease with a "collapsed disc" at one level "with disc protrustion." (TR 319-320). He scheduled Plaintiff for a series of epidural injections which Plaintiff later informed Dr. Frank in September 2004 were very beneficial along with a back brace and TENS unit. (TR 329).

Plaintiff saw Dr. Frank in March 2005 for a recheck of her hypertension and she informed Dr. Frank that she was "going to wait" on the spinal surgery recommended by Dr. Anagnost. (TR 326). This statement is contrary to the records of Dr. Anagnost who noted he had recommended continued conservative treatment of Plaintiff's lumbar degenerative disc disease unless she became "symptomatic in the future." (TR 721).

Plaintiff submitted a medical source statement completed by Dr. Frank in May 2006 in which the physician stated that Plaintiff could occasionally lift 20 pounds, frequently lift less than 10 pounds, stand and/or walk less than 1 hour but only 15 minutes continuously, sit for one hour but only 15-20 minutes continuously, perform "limited" pushing and/or pulling, occasionally climb, reach, handle, finger, or feel, and never balance, stoop, kneel, crouch, crawl, or work around heights or in cold temperatures. (TR 342-343). As objective evidence to support these restrictions, Dr. Frank noted that an "MRI confirmed radiculopathy." (TR 343). An office note on the same date indicated Plaintiff was seen in connection with her disability claim and that the "form [was] filled out" but no treatment was rendered. (TR 345).

When an ALJ considers the opinion of a disability claimant's treating physician, the

ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "where the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, __ F.3d. __, 2013 WL 2631530, * 5 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

The ALJ recognized that Dr. Frank had effectively opined that Plaintiff was disabled because she was unable to perform even a limited range of sedentary work. (TR 421). Following the criteria established by the relevant regulations, the ALJ found that the opinion was "not well-supported by medically acceptable clinical findings and diagnostic techniques including the treating family specialist's and other treating physicians' contemporaneous ongoing treatment notes and is not consistent with other substantial evidence in the hearing record" and it was therefore only entitled to "little weight." (TR 421, 423).

Plaintiff cites evidence in the record, including the previously-discussed diagnosis and treatment notes of Dr. Anagnost, one note from Dr. Jenkins in June 2004 indicating Plaintiff

13

complained of low back pain with occasional leg pain for which the physician prescribed exercises, a back brace, and possible epidural steroid injections. (TR 282-283), and a note from Dr. Smith, a podiatrist, in April 2003 that Plaintiff complained of foot pain for which the doctor prescribed orthotics for an "old fracture"in her right foot causing "some degenerative joint disease." (TR 191, 293). The ALJ's decision includes consideration of this medical evidence. In discussing Dr. Frank's medical source statement, the ALJ noted that Plaintiff had "been followed with ongoing conservative medical treatments" and that she had benefitted "from the ongoing conservative medical treatments." (TR 421). The ALJ noted that Dr. Frank's contemporaneous office note dated May 30, 2006, indicated Plaintiff reported she was experiencing neck and upper extremity pain resulting from degenerative disc disease of her cervical spine, that the physician did not describe any independent evidence confirming the existence of degenerative disc disease of the cervical spine, and that no such medical evidence appears in the record. (TR 422). Nevertheless, as the ALJ reasoned, Dr. Frank "used this report of ongoing cervical spinal disease and symptoms as [a] significant part of his basis of assessing the claimant as suffering totally disabling health impairments." (TR 422).

Plaintiff complains that the ALJ misread Dr. Frank's note of the May 30, 2006 office visit and that Dr. Frank was actually stating that based on his clinical observations of Plaintiff she probably had a cervical lesion. The brief office note provided by Dr. Frank does not indicate any clinical findings but expresses Plaintiff's "chief problem" as being "chronic radiculopathy in her lower extremities and developing edema and radiculopathy in her hands,

14

likely from a cervical lesion. She had an MRI confirmed and saw a Neurosurgeon, back doctor who did a series of epidural injections and she has residual problems." (TR 345). Based on this brief summary of Plaintiff's "problem," Dr. Frank listed a diagnostic assessment of "[l]umbar and cervical radiculopathy with permanent disability." (TR 345). In his medical source statement dated May 30, 2006, Dr. Frank noted that his opinion concerning Plaintiff's functional limitations, including limitations in reaching, handling, fingering, and feeling, were supported by "MRI confirmed radiculopathy" with "[l]ower extremity weakness" and "episodes of upper extremity weakness." (TR 342-343). The ALJ did not err in reasoning that Dr. Frank's medical source statement was not consistent with either his own treatment notes or with other medical evidence in the record. The ALJ provided reasons supported by substantial evidence in the record for giving "little weight" to Dr. Frank's medical opinion that Plaintiff was effectively disabled. Accordingly, the Commissioner's final decision that Plaintiff was not disabled prior to September 13, 2007, should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits alleging disability prior to September 13, 2007. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____July 11th_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ.

15

P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____21st____ day of ____June____, 2013.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE